**PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT
_____

No. 10-1673
_____


DEBORAH L. BALDWIN,
as guardian of C.L.D., a minor, K.K.D., a minor,
and C.M.D., a minor,
                              Appellant


v.


UNIVERSITY OF PITTSBURGH MEDICAL CENTER (UPMC);
LIFE INSURANCE COMPANY OF NORTH AMERICA
_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
(Civil Action No. 09-cv-1220)
District Judge: Honorable Joy Flowers Conti
_____


Argued
February 10, 2011

Before:  JORDAN, GREENAWAY, JR., and GARTH, Circuit
Judges

(Opinion filed: March 29, 2011)

Patrick W. Murray, Esq. (Argued)
Stewart, Murray & Associates
437 Grant Street
Frick Building, Suite 600
Pittsburgh, PA 15219
          Counsel for Appellant

John G. Ferreira, Esq.
Stephanie R. Reiss, Esq. (Argued)

1

Morgan Lewis & Bockius, LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA 15219
    Counsel for Appellee Life Insurance Company of North
America

John J. Myers, Esq.
Andrew T. Quesnelle, Esq. (Argued)
Eckert, Seamans, Cherin & Mellott LLC
44th Floor, U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219
    Counsel for Appellee University of Pittsburgh Medical
Center (UPMC)

_____

OPINION OF THE COURT
_____

GARTH, Circuit Judge.

This appeal by the plaintiff-appellant Deborah L. Baldwin as the adoptive mother of three Trent children requires us to decide Baldwin's standing to claim the insurance proceeds of policies subject to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, which were purchased by the children's biologic mother. The District Court denied relief to Baldwin, holding that she, as the adoptive mother to Trent's three children, has no standing to receive the insurance proceeds on behalf of the children under ERISA. We hold that Baldwin is entitled to offer evidence as to Trent's intent, i.e., understanding of the terms of her insurance policies, in order to establish the facts she alleges in her complaint. As a consequence, we will reverse the District Court's judgment and remand to the District Court for further proceedings as directed in this opinion.

2

## I.

In 2001, Victoria Trent, biologic mother of three minor children, C.L.D., K.K.D., and C.M.D., began working for appellee University of Pittsburgh Medical Center (UPMC).  On June 6, 2003, at Trent's urging, Trent's lifelong family friend, Deborah Baldwin, adopted the children and became their legal guardian.  New birth certificates were issued for the children.  Notwithstanding the adoption, Trent maintained a parental relationship with the children, who still referred to her as "Mom": she lived with Baldwin and the children for three years after they were adopted by Baldwin, and Trent spent all holidays and festivals with Baldwin and the children.

Trent was employed at UPMC from 2001 to 2008.  Trent enrolled in four insurance plans offered by UPMC for the year 2008.  The premiums for these were deducted from her salary each pay period: 1) a $25,000 basic life insurance policy; 2) a $25,000 basic accidental death and dismemberment (AD&D) insurance policy; 3) a $100,000 supplemental group life insurance policy; and 4) a $200,000 supplemental AD&D insurance policy.  Trent designated a beneficiary -- Baldwin -- for the $25,000 basic life policy, but did not designate a beneficiary for the three remaining policies.

Each of the life policies, as distinct from the ERISA statute, contains the following language:

> If there is no named beneficiary or surviving beneficiary, Death Benefits will be paid to the first surviving class of the following living relatives: spouse; child or children; mother or father; brothers or sisters; or to the executors or administrators of the Insured's estate.

To similar effect, the AD&D policies provide:

> If there is no named beneficiary or surviving beneficiary, or if the Employee dies while benefits are payable to him, We may make direct

payment to the first surviving class of the following classes of persons:
1) spouse;
2) child or children;
3) mother or father;
4) sisters or brothers;
5) Estate of the Covered Person.

On December 23, 2008, Trent died in an accident at the age of thirty-four. Following Trent's death, Baldwin timely sought payment under each of Trent's insurance policies in accordance with the applicable claims procedure. The insurer, Life Insurance Company of North America (LINA), paid $25,000 due to Baldwin as the designated beneficiary of Trent's basic life policy. However, LINA rejected Baldwin's claims on behalf of the children for the proceeds from the other three policies. LINA explained that as a result of the adoption, the children were no longer considered Trent's "children" for the purposes of the policies' default-beneficiary provisions.

Baldwin appealed LINA's determination. In a May 15, 2009, letter, LINA, using Cigna Group Insurance (CIGNA) as signatory, detailed the reasons why, after further review, it had again concluded that the insurance proceeds were "not payable" to the children:

> While Mrs. Trent may have maintained a relationship with her biological children, this would not supersede the fact that Ms. Trent waived all legal ties with the children. As a result of the adoption [C.L.D., K.K.D., and C.M.D.] became the legal children of Ms. Baldwin and would no longer be eligible for benefits under these policies as the children of Ms. Trent.
>
> At the time of her death, there was no beneficiary named by Ms. Trent for the [$100,000 supplemental group life policy and accidental death policies]. Therefore, the benefits of these policies

4

would be payable under the facility of payment wording contained in this policy. The facility of payment does not contain provisions that allow for payment of benefits to step-children or any other child which may be in a close familial relationship with the insured. Since [C.L.D., K.K.D., and C.M.D.] were not the children of Victoria Trent at the time of her death, no benefits were payable to them . . . .

. . . .

This policy is a binding contract between Victoria Trent and the insuring company. Therefore, in an effort to provide equitable claims administration to our insureds we must honor all policy provisions. Since Ms. Trent did not designate [C.L.D., K.K.D., and C.M.D.] to receive any proceeds from this policy, we cannot honor payment to them or any other person not designated as beneficiary of record with the employer prior to Ms. Trent's death or the first class of surviving relatives.

Having exhausted all avenues of administrative review of her claim, Baldwin, as guardian of the children, filed a complaint in the District Court for the District of Western Pennsylvania against UPMC and LINA.[1] In the two-count complaint, Count One alleged that UPMC and LINA had breached their fiduciary duty to Trent and the children, in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A) and (B), by failing to act for the exclusive purpose of providing benefits and inadequately managing the enrollment process; and

---

[1] Although CIGNA originally was also named as a defendant, it was removed by stipulation of the parties on November 12, 2009. CIGNA was utilized by LINA as a business name of LINA.

5

Count Two alleged that the two defendants had arbitrarily and capriciously denied the children benefits, which is a basis for recovery under ERISA, 29 U.S.C. § 1132(a)(1)(B).

## II.

The two defendants moved to dismiss the complaint for lack of both subject-matter jurisdiction and statutory standing. The District Court dismissed Baldwin's complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim. See Vaughn v. Bay Envtl. Mgmt., Inc., 567 F.3d 1021, 1024 (9th Cir. 2009) (citing Lanfear v. Home Depot, Inc., 536 F.3d 1217, 1221-22 (11th Cir. 2008), and Harzewski v. Guidant Corp., 489 F.3d 799, 803-04 (7th Cir. 2007)). The standard for reviewing dismissals under Rules 12(b)(1) (for lack of subject matter jurisdiction) and 12(b)(6) (for failure to state a claim) "is the same: we accept as true plaintiffs' material allegations, and construe the complaint in the light most favorable to them." Alston v. Countrywide Fin. Corp., 585 F.3d 753, 758 (3d Cir. 2009) (citation omitted).

In a March 16, 2010, opinion and order, the District Court granted defendants' motion to dismiss with prejudice, holding that Baldwin had neither statutory nor prudential standing to bring her claim under ERISA. ERISA does not specify who is a "beneficiary" beyond "one who is[,] or may become entitled to[,] a benefit," 29 U.S.C. § 1002(8) -- a remarkably broad category. The District Court held that the category of default beneficiaries provided in the insurance policies determined who was to obtain the benefits under the policies. The second category of default beneficiaries specified by the insurance plans is "child or children." The definition of "child or children"[2] is relevant to this appeal because that phrase appears in the insurance plans at issue.

To define the term "children" as used in the insurance plans, the District Court rejected Baldwin's request that it consult Pennsylvania contract law. Instead, the District Court sought elucidation from federal common law and the Pennsylvania Intestate Succession Law, 20 Pa. Cons. Stat. Ann. §§ 2103, 2108,

---

[2] For ease of reference in this opinion, we shorten "child or children" to "children."

which the District Court concluded mandate that adoption severs the legal link between birth parent and child. Under this interpretation, the child becomes the child of the adoptive parent only.

Importing that definition of "children" into the insurance plans' language, the District Court held that the adopted children were not entitled to benefits by default as Trent's "children." Thus, inasmuch as the children could not make out a colorable claim of their entitlement to benefits, neither they, nor Baldwin, their guardian, had standing to bring suit under ERISA, and the District Court was therefore without subject-matter jurisdiction.

This appeal followed.

III.

This Court has plenary review over an order dismissing an ERISA claim for lack of standing. See Leuthner v. Blue Cross & Blue Shield of Ne. Pa., 454 F.3d 120, 124 (3d Cir. 2006); Miller v. Rite Aid Corp., 334 F.3d 335, 340 (3d Cir. 2003). We must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operation Eng'rs, Local Union No. 66, 580 F.3d 185, 192 (3d Cir. 2009) (quoting McTernan v. City of York, Pa., 564 F.3d 636, 646 (3d Cir. 2009)). "'A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.'" Id. (quoting McTernan, 564 F.3d at 646).

IV.

"To bring a civil action under ERISA, a plaintiff must have constitutional, prudential, and statutory standing." Leuthner, 454 F.3d at 125. To ensure that the latter two forms of standing are satisfied in an ERISA case, a court must assure itself that the "'plaintiff's grievance . . . arguably fall[s] within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit.'" Miller, 334 F.3d at 340 & n.1 (3d Cir. 2003) (quoting Bennett v. Spear, 520 U.S. 154, 162 (1997)); see also Leuthner, 454 F.3d at 126 (explaining that

7

"ERISA's statutory standing requirements are a codification of the 'zone of interest' analysis" typically used to determine prudential standing).

ERISA § 502(a), 29 U.S.C. § 1132(a), entitles only "a participant or beneficiary" to institute a civil action for benefits against a plan administrator. Therefore, in the context of ERISA claims for benefits, the "zone of interests" inquiry "is inexorably tied to the question of whether a plaintiff can meet the definitions of either a participant or beneficiary." Miller, 334 F.3d at 340-41.

Because neither Baldwin nor the children she represents were "participants" in the plans at issue, the only relevant definition is that of a "beneficiary" -- that is, "a person designated by a participant, or by the terms of an employee benefit plan, who is[,] or may become entitled to[,] a benefit thereunder." 29 U.S.C. § 1002(8). Alleged beneficiaries such as the children here must demonstrate that they "may become entitled to a benefit" by presenting "'a colorable claim that . . . [they] will prevail in a suit for benefits.'" Leuthner, 454 F.3d at 124 (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 118 (1989)). The burden of persuasion for establishing a colorable claim is less exacting than that needed to establish a likelihood of success on the merits. Id. (citing Daniels v. Thomas & Betts Corp., 263 F.3d 66, 78-79 (3d Cir. 2001)).

V.

Claims for benefits based on the terms of an ERISA plan are contractual in nature and are governed by federal common law contract principles. Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found., 334 F.3d 365, 381 (3d Cir. 2003) (citing Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202, 1210 (2d Cir. 2002)); see also Kemmerer v. ICI Ams., Inc., 70 F.3d 281, 287 (3d Cir. 1995) (noting that disputes arising out of ERISA plan documents are governed by "breach of contract principles, applied as a matter of federal common law"). Accordingly, where claims put at issue the meaning of plan terms, we apply the federal common law of contract to interpret those terms. See Burstein, 334 F.3d at 381. Since the claims asserted by Baldwin on behalf of C.L.D., K.K.D., and C.M.D. turn on the meaning of "children" in the subject insurance policies, our task is to interpret that term in accordance with the federal common law,

8

which of course draws heavily on generally established principles of contract interpretation.  See IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 124 (3d Cir. 1986) (citation omitted).

"The paramount goal of contract interpretation is to determine the intent of the parties." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 587 (3d Cir. 2009) (citations and internal quotation marks omitted); see also Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980) ("In construing a contract, a court's paramount consideration is the intent of the parties." (citation and internal quotation marks omitted)).  Courts are to consider "not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior." Am. Eagle, 584 F.3d at 582 (citations and internal quotation marks omitted); see also Mellon Bank, 619 F.2d at 1009 ("[C]ourts must eschew the ideal of ascertaining the parties' subjective intent and instead bind parties by the objective manifestations of their intent.").

The strongest objective manifestation of intent is the language of the contract.  Mellon Bank, 619 F.2d at 1009; see also Am. Eagle, 584 F.3d at 587 (acknowledging "the 'firmly settled' principle that 'the intent of the parties to a written contract is contained in the writing itself'" (citation omitted)).  Thus, where the words of the contract clearly manifest the parties' intent, a court need not "resort to extrinsic aids or evidence." Am. Eagle, 584 F.3d at 587 (citation and internal quotation marks omitted).

The words of the contract clearly manifest the parties' intent if they are capable of only one objectively reasonable interpretation. Tamarind Resort Assocs. v. Gov't of the Virgin Islands, 138 F.3d 107, 110-11 (3d Cir. 1998) ("We have consistently embraced the basic common law principle that a contract is unambiguous if it is reasonably capable of only one construction." (citing, e.g., Sumimoto Mach. Corp. of Am., Inc. v. AlliedSignal, Inc., 81 F.3d 328, 332 (3d Cir. 1996), and Am. Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co., 62 F.3d 574, 581 (3d Cir. 1995))).  If the words of the contract are capable of more than one objectively reasonable interpretation, the words are ambiguous. Am. Eagle, 584 F.3d at 587.  Ambiguous terms that appear clear and unambiguous on their face, but whose meaning is made uncertain due to facts beyond the four corners of the contract, suffer from

9

latent ambiguity.  Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 614 (3d Cir. 1995).

Courts have the responsibility to determine as a matter of law whether contract terms are clear or ambiguous.  Mellon Bank, 619 F.2d at 1011 (citation omitted); see also In re New Valley Corp., 89 F.3d 143, 149 (3d Cir. 1996) ("Whether a document is ambiguous presents a question of law properly resolved by this court." (citing Stendardo v. Fed. Nat'l Mortg. Ass'n, 991 F.2d 1089, 1094 (3d Cir. 1993))).  To make that determination, a court must consider "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning."  Mellon Bank, 619 F.2d at 1011; see also New Valley, 89 F.3d at 150 (applying common law contract principles in an ERISA context and noting that, to address potentially ambiguous contract terms, a court must "hear the proffer of the parties and consider extrinsic evidence to determine whether there is an ambiguity").  The objective, extrinsic evidence proffered may include, for example, "the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning."  New Valley, 89 F.3d at 150 (citing Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993)).  Extrinsic evidence notwithstanding, "the parties remain bound by the appropriate objective definition of the words they use to express their intent."  Mellon Bank, 619 F.2d at 1013.

The proper focus of the extrinsic evidence in resolving an instance of latent ambiguity is the parties' "objectively manifested 'linguistic reference'" regarding the ambiguous term, not their expectations.  Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 94 n.3 (3d Cir. 2001) (quoting Duquesne Light, 66 F.3d at 614).

> For example, if the evidence show[s] that the parties normally meant to refer to Canadian dollars when they used the term "dollars," this [is] evidence of the right type.  Evidence regarding a party's beliefs about the general ramifications of the contract [is not] the right type to establish latent ambiguity.

10

Id. (citations omitted).

## VI.

The issue here is whether the word "children" presents a latent ambiguity -- that is, whether "children," from the objectively manifested linguistic reference point of the parties to the insurance contracts, is susceptible of more than one objectively reasonable meaning. More specifically, is it objectively reasonable to construe "children" to mean "biologic children," or is it only objectively reasonable to construe "children" as "children recognized by state intestacy and adoption law"? On the record before us, we are unable to determine whether both of those interpretations are objectively reasonable, and it does not appear that the District Court attempted such a determination. Arguably, however, there is a latent ambiguity in the term "children." To establish standing, Baldwin is only required to plead "enough fact to raise a reasonable expectation that discovery will reveal evidence" demonstrating that, regardless of any subsequent adoption, Trent and the defendants understood C.L.D., K.K.D., and C.M.D. would be considered to be Trent's "children" as that term is used in the subject contracts, even if it were to appear "that actual proof of those facts is improbable, and that recovery is very remote and unlikely." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citation and internal quotation marks omitted).

According to the allegations in the complaint, Trent took out four policies, which were set to pay out a total of $350,000 in the event of her death. Trent designated Baldwin, a lifelong family friend and guardian of Trent's biologic children, as beneficiary of the $25,000 basic life policy. Trent had lived together with Baldwin and the children for several years after Trent began working at UPMC. Until her death, Trent maintained a parental relationship with the children. Trent had no spouse and no living parents, yet continued to pay for life insurance more than five years after her children were legally adopted by Baldwin. At oral argument, we learned for the first time that Trent had a half-brother and/or half-sister who were not named as beneficiaries of any of the four insurance policies.

Those allegations, while insufficient to resolve the potential ambiguity of "children," are sufficient to make out a colorable claim that such an ambiguity exists and that Trent's biologic

11

children are or may become entitled to benefits based on one arguably objectively reasonable meaning of the term.[3] Thus, the children -- and Baldwin on their behalves -- have ERISA standing. In so concluding, we are guided by the principle that ERISA is a remedial statute that should be liberally construed to achieve its ends, which include protecting plan participants and beneficiaries. See Firestone, 489 U.S. at 113; Barker & Williamson, 788 F.2d at 127.

We acknowledge the District Court's thoughtful approach to identifying and applying what it conceived to be the correct governing law. The District Court attempted to resolve the issue before it by seeking to interpret the term "children" in the subject insurance policies. It looked for guidance to La Bove v. Metropolitan Life Insurance Co., in which we examined state law to construe the meaning of "children" in a life insurance policy governed by the Federal Employees' Group Life Insurance Act of 1954. 264 F.2d 233, 234-36 (3d Cir. 1959). Nonetheless, when a contract term is reasonably argued to be ambiguous, the better approach, and the one that is consistent with the weight of controlling authority, is to allow the parties to proffer evidence in support of alternative interpretations of the term so that the court may properly address the purported ambiguity.[4] That is the approach required by our precedent under ERISA, New Valley, 89 F.3d at 150, and it should guide the District Court on remand.

Because Baldwin has made out a colorable claim that the children are, or may become, entitled to a benefit under the ERISA plans at issue, we hold that she has prudential and statutory standing to bring this civil action. Accordingly, we will vacate the order of March 16, 2010, dismissing the complaint and remand to the District Court for further proceedings consistent with this opinion.

---

[3] The allegations are hence also sufficient to state a claim for relief and so can withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

[4] We recognize that this presents something of a conundrum, because one could say that there can be no standing unless there is actually an ambiguity, which has not yet been determined. We think, however, that this "which came first, the chicken or the egg" problem is best resolved by deciding that the potential ambiguity is sufficient to establish standing.